IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **YULON CLERK,** *on behalf of herself and all others similarly situated*, | : : : | |
| Plaintiff, | : | CIVIL ACTION |
| v. | : : | |
| | : | No. 09-2245 |
| **CASH AMERICA NET OF NEVADA, LLC,** | : : | |
| Defendant. | : : | |

**Norma L. Shapiro, J.**                                                                                         **August 22, 2011**

## MEMORANDUM

Plaintiff Yulon Clerk filed a state class action complaint alleging that the financial lending practices of fourteen defendants were illegal under Pennsylvania law. Defendants removed the action to federal court. We severed plaintiff's claim against defendant Cash America Net of Nevada, LLC ("Cash America of Nevada") from the claims against the other thirteen defendants, and severed the claims against the other thirteen defendants from each other. We retained plaintiff's action against defendant Cash America of Nevada on our docket; the other thirteen actions were reassigned. Before the court is defendant's motion to compel individual arbitration and stay litigation. For the reasons discussed below, the motion will be granted.

**I.      Factual Background**

Plaintiff, a Pennsylvania citizen, brings a putative class action on behalf of herself and all others similarly situated against defendant Cash America of Nevada. Plaintiff alleges that defendant engaged in illegal, unfair, and deceptive lending practices, in violation of Pennsylvania's Loan Interest Protection Law ("LIPL"), 41 P.S. §§ 101, 502 *et seq.*, Consumer

Discount Company Act ("CDCA"), 7 P.S. § 6201 *et seq.*, and Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.* Plaintiff also brings a claim for unjust enrichment. Plaintiff requests: actual and statutory damages; treble damages under the LIPL; restitution of excess interest and charges collected by defendant; a declaration that the loan agreements signed by plaintiff are void and unenforceable; injunctive relief as the court deems proper; and attorney's fees and costs.

Defendant Cash America of Nevada operated a website, www.CashNetUSA.com, to provide short-term loan contracts, also called "payday" loans,[1] to individuals. Defendant Cash America of Nevada, a limited liability company, is a wholly owned subsidiary of Cash America International, Inc., a Texas corporation with its principal place of business in Texas. A limited liability company is a citizen of each state of which its members are citizens. *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010). Defendant Cash America of Nevada is a Texas citizen. We have subject matter jurisdiction under the Class Action Fairness Act because there is diversity of citizenship between the parties and the aggregate amount in controversy from all putative class members exceeds $5 million. *See* 28 U.S.C. § 1332(d)(2).

Plaintiff alleges defendant negotiated or made short-term loans of less than $25,000 with interest rates greatly exceeding the ceilings allowed under the Pennsylvania usury and small-loan laws. Pennsylvania has a general usury ceiling of six percent (6%), but licensed small-loan

---

[1] "Payday loans are short-term, high-interest-or-fee loans that are generally secured by a post-dated check or a debit authorization executed by the borrower and, subsequently, presented by the lender after a predetermined period, usually set at two weeks to coincide with the borrower's payday." *Pa. Dep't of Banking v. NCAS of Del., LLC*, 948 A.2d 752, 754 (Pa. 2008).

2

lenders can make consumer loans for amounts less than $25,000 at interest rates as high as twenty-four percent (24%) APR.  *See* 41 Pa. Cons. Stat. Ann. § 201; 7 Pa. Con. Stat. Ann. § 6203.  Plaintiff alleges that defendant, who was not licensed as a small-loan lender, charged Pennsylvania customers illegal interest rates exceeding Pennsylvania's six percent (6%) usury ceiling.  The Commonwealth Court of Pennsylvania has held, and the Pennsylvania Supreme Court recently affirmed, that defendant's lending practices were unlawful under the CDCA because defendant was not licensed by the Pennsylvania Department of Banking.  *Cash Am. Net of Nev., LLC v. Pa. Dep't of Banking*, 978 A.2d 1028, 1038 (Pa. Commw. Ct. 2009), *aff'd*, 8 A.3d 282 (Pa. 2010).  The Pennsylvania Department of Banking is enforcing the Commonwealth Court's order prospectively only.  *Cash Am.*, 8 A.3d at 298-99.  Plaintiff's claims in the class action complaint are not the subject of an enforcement action because her claims arose before the Commonwealth Court held defendant's lending practices unlawful.

Between June and August, 2007, plaintiff entered into three short-term loan agreements over the internet with defendant Cash America of Nevada.  The loan agreements, signed by plaintiff by clicking a link on defendant's website, each state: "This Customer Agreement will be governed by the laws of the State of Nevada, except that the arbitration provision is governed by the Federal Arbitration Act ("FAA")."  Def.'s Mot. to Compel Arbitration & Stay, Ex. 1 attached to Ex. A.  Each loan agreement contains a "Waiver of Jury Trial and Arbitration Provision," stating that a borrower must raise all claims against the lender in an arbitration proceeding on an individual basis.[2]  *Id.* ¶¶ 1-3.  A borrower waives the right to file a lawsuit in court, except in a

---

[2] The arbitration provision states, in pertinent part:
**WAIVER OF JURY TRIAL AND ARBITRATION PROVISION.** Arbitration is a process in which persons with a dispute: (a) waive their rights to file a lawsuit and proceed in court and to have a jury trial to resolve their disputes; and (b) agree, instead, to submit their disputes to a neutral third person (an "arbitrator") for a decision.

small claims tribunal. *Id.* ¶ 2. A borrower also waives the right to seek relief on a class or representative basis. *Id.* ¶ 3.

The arbitration provision permits a borrower to select the American Arbitration Association, the National Arbitration Forum, or a local arbitrator who is an attorney, retired judge, or an arbitrator registered and in good standing with an arbitration association. *Id.* ¶ 4. The arbitrator is to apply applicable substantive law (consistent with the FAA), may award statutory damages and/or reasonable attorney's fees allowed by applicable law, and may decide any motion that is substantially similar to a motion to dismiss for failure to state a claim or a motion for summary judgment. *Id.* ¶ 5. However, the arbitrator may not apply federal or state rules of civil procedure or evidence. *Id.* Regardless of who demands arbitration, the lender will advance the borrower's portion of arbitration expenses, but the parties bear their own attorney's

---

Each party to the dispute has an opportunity to present some evidence to the arbitrator. Pre-arbitration discovery may be limited. Arbitration proceedings are private and less formal than court trials. The arbitrator will issue a final and binding decision resolving the dispute, which may be enforced as a court judgment. A court rarely overturns an arbitrator's decision. **THEREFORE, YOU ACKNOWLEDGE AND AGREE AS FOLLOWS:**
1.   For purposes of this Waiver of Jury Trial and Arbitration Provision (hereinafter the "Arbitration Provision"), the words "dispute" and "disputes" are given the broadest possible meaning. . . .
2.   You acknowledge and agree that by entering into this Arbitration Provision:
**(a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES;**
**(b) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US OR RELATED THIRD PARTIES; and**
**(c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.**
3. Except as provided in Paragraph 6 below, all disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. **THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION** . . .
6.   All parties, including related third parties, shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction. Any dispute, which cannot be adjudicated within the jurisdiction of a small claims tribunal, shall be resolved by binding arbitration. Any appeal of a judgment from a small claims tribunal shall be resolved by binding arbitration. . . .
*Id.* ¶¶ 1-3, 6 (emphasis in original).

fees and costs such as witness and expert fees. *Id.* If the arbitrator's award is in favor of the borrower, the borrower need not reimburse the lender for the expenses advanced, and the lender will reimburse the borrower for any arbitration expenses previously paid; if the award is in favor of the lender, the borrower is required to reimburse the expenses advanced, not to exceed the amount of court costs incurred for a small claims filing, less any arbitration expenses the borrower has already paid. *Id.*

## II.     Discussion

Defendant moves, based on the plain language of the arbitration provision contained in each loan agreement, to compel individual arbitration and stay litigation pending completion of arbitration. Plaintiff responds that the arbitration provision, in particular its class action waiver, is procedurally and substantively unconscionable, and unenforceable under Pennsylvania law.

A court, not an arbitrator, decides issues of arbitrability, *i.e.*, whether the parties have submitted a particular dispute to arbitration by a valid arbitration agreement. *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999). A motion to compel arbitration is granted if there are no genuine disputes of material fact that: (1) a valid agreement to arbitrate was entered by the parties; and (2) the parties' particular claims are within the scope of the arbitration agreement. *Kaneff v. Del. Title Loans*, 587 F.3d 616, 620 (3d Cir. 2009); *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005).

There are no disputes of material fact on the issues before the court. There were three agreements to arbitrate, evidenced by signed loan agreements, each containing an arbitration

provision.  *See* Defs.' Mot. to Compel Arbitration & Stay, Ex. 1 attached to Ex. A.  Plaintiff's claims are within the scope of the arbitration provisions; each loan agreement states that "all federal and state law claims, disputes or controversies, arising from or directly relating to this Agreement . . ." and "all claims based upon a violation of any state or federal constitution, statute or regulation" are subject to arbitration.  *Id.* ¶ 1.  The only issue is the validity of the arbitration agreements.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "establishes a strong federal policy in favor of the resolution of disputes through arbitration."  *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003).  The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983).  The FAA provides that a "written provision in . . . a contract evidencing a transaction involving commerce[3] to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract*."  9 U.S.C. § 2 (emphasis added).  "This saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (citations omitted).

Plaintiff argues that the arbitration provision is unenforceable because it contains a class

---

[3] Whether the loan agreements evidence a transaction involving interstate commerce is not disputed.  The loans in this action were entered into over the internet by parties from different states; the loan agreements evidence transactions involving interstate commerce.

6

action waiver that is unconscionable under Pennsylvania law.  It is not necessary to consider whether or not Pennsylvania law applies to determine the validity of the arbitration provision, and whether or not the arbitration provision would be unconscionable under Pennsylvania law; under the Supreme Court's recent decision in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740 (2011), the FAA preempts Pennsylvania unconscionability law set forth in *Thibodeau v. Comcast Corp.*, 912 A.2d 874, 885-86 (Pa. Super. Ct. 2006).

In *Concepcion*, the Supreme Court held that the FAA preempted California unconscionability law set forth in *Discover Bank v. Superior Court*, 113 P.3d 1100 (Cal. 2005)). 131 S. Ct. at 1753.  The plaintiffs in *Concepcion* each entered into a cell phone agreement with defendant AT&T Mobility, LLC ("AT&T").  *Id.* at 1744.  AT&T advertised that purchase of its cell phone service entitled plaintiffs to free phones.  *Id.*  Plaintiffs received free phones but were charged $30.22 in sales tax based on the phones' retail value.  *Id.*  Plaintiffs filed a complaint against AT&T in federal court; their complaint was later consolidated with a putative class action alleging, among other things, that charging sales tax on phones advertised as free constituted false advertising and fraud.  *Id.*

AT&T moved to compel individual arbitration under the terms of its standard cell phone agreement containing an arbitration clause and class action waiver.  *Id.* at 1745.  Plaintiffs argued that the motion to compel individual arbitration should be denied because the class action waiver in the arbitration clause was unconscionable.  *Id.*  Relying on the California Supreme Court decision in *Discover Bank*, the district court and court of appeals held that the class action waiver in the arbitration clause was procedurally and substantively unconscionable, and unenforceable. *Id.*; *see also Discover Bank*, 113 P.3d at 1110 (class action waivers in arbitration agreements are

7

unconscionable "when the waiver is found in a contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages ").

The Supreme Court reversed. The Court held that the FAA preempted California unconscionability law, and under the FAA, the arbitration clause and its class action waiver were valid and enforceable. *Concepcion*, 131 S. Ct. at 1746-53. The Court acknowledged that Section 2 of the FAA contains a savings clause permitting "generally applicable contract defenses, such as fraud, duress, or unconscionability," to invalidate an arbitration agreement, but decided that even generally applicable defenses may be preempted by the FAA if they are "applied in a fashion that disfavors arbitration" because they undermine the FAA's central purpose. *Id.* at 1746-49. The Court stated that classwide arbitration undermines the central purpose of the FAA by "sacrific[ing] the principal advantage of arbitration—its informality" for a procedure that is "slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* at 1750-51. The Court concluded that the FAA preempts California unconscionability law because the state law in effect requires the availability of classwide arbitration, and classwide arbitration undermines the central purpose of the FAA. *Id.* at 1753.

Even if plaintiffs are correct that Pennsylvania law applies, the analysis of California unconscionability law in *Concepcion* applies with equal force to Pennsylvania unconscionability law. In *Thibodeau v. Comcast Corp.*, the Pennsylvania Superior Court held that an arbitration clause with a class action waiver, contained in a Comcast cable television agreement, was unconscionable under Pennsylvania law. 912 A.2d 874, 885-86 (Pa. Super. Ct. 2006). The court determined the class action waiver was procedurally unconscionable because plaintiff "was forced to accept every word of all 10 pages of the mass-delivered Comcast [C]ustomer

[A]greement or have no cable television service whatsoever, since Comcast holds a government-authorized geographic monopoly." *Id.* at 885. The court determined the class action waiver was substantively unconscionable because plaintiff's damages, a $9.60 per month overcharge, were so small that individual arbitration was economically unfeasible, and without an available class action, defendants were effectively immunized from liability. *Id.* at 885-86.

Like the California Supreme Court decision in *Discover Bank*, the Pennsylvania Superior Court decision in *Thibodeau*, in its analysis of the circumstances under which class action waivers are procedurally and substantively unconscionable, effectively requires the availability of classwide arbitration. *See id.* Under *Concepcion*, the FAA preempts Pennsylvania's unconscionability law with regard to a class action waiver in an arbitration agreement.[4] The instant arbitration clause containing a class action waiver is valid and enforceable under Section 2 of the FAA.

## III.   Conclusion

The arbitration clause is valid and enforceable under the FAA. The motion to compel arbitration and stay litigation will be granted. An appropriate order follows.

---

[4] The case for FAA preemption may be even stronger with *Thibodeau* compared to *Discover Bank*. In addition to its unconscionability analysis, the Pennsylvania Superior Court notes in *Thibodeau* that a class action waiver in an arbitration clause is unenforceable as against Pennsylvania public policy because Pennsylvania "encourages class action arbitration" and has a "longstanding policy favoring classwide arbitration." *Thibodeau*, 912 A.2d at 881. A policy favoring classwide arbitration is what the Supreme Court has identified as undermining FAA objectives. *See Concepcion*, 131 S. Ct. at 1748-53.